No. 20-5032

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

GUNAY MIRIYEVA, et al.,

Plaintiffs-Appellants,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Columbia,
Case No. 1:19-cv-03351-ESH before the Hon. Ellen S. Huvelle

**PLAINTIFFS-APPELLANTS' BRIEF**

Jennifer M. Wollenberg
Douglas W. Baruch
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: +1.202.739.3000
Facsimile:  +1.202.739.3001
jennifer.wollenberg@morganlewis.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............1

I.     PARTIES AND AMICI...............................................................................1

II.    RULINGS UNDER REVIEW......................................................................1

III.   RELATED CASES......................................................................................2

JURISDICTIONAL STATEMENT ....................................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................3

PERTINENT STATUTES ..................................................................................3

STATEMENT OF THE CASE............................................................................6

I.     STATEMENT OF FACTS..........................................................................8

    A.     The MAVNI Program ....................................................................8

    B.     USCIS Procedures and Policies ....................................................11

    C.     Plaintiffs' Military Service and Application of the USCIS
           Policy.............................................................................................13

           1.     Gunay Miriyeva ..................................................................13

           2.     Ann Tum ..............................................................................16

           3.     Siddhi Kulkarni ...................................................................18

           4.     Bipin Kadel .........................................................................19

II.    THE JUDICIAL REVIEW FRAMEWORK................................................20

III.   PROCEDURAL HISTORY .......................................................................21

SUMMARY OF ARGUMENT ..........................................................................23

ARGUMENT .....................................................................................................24

I.     THE MOTION TO DISMISS STANDARD ..............................................24

II.    THE DISTRICT COURT HAS JURISDICTION TO HEAR
      PLAINTIFFS' APA AND CONSTITUTIONAL CLAIMS ........................25

    A.     Judicial Review .............................................................................25

    B.     Section 1421(c) Does Not Strip the Courts of Subject-Matter
           Jurisdiction to Hear Plaintiffs' Claims .........................................28

# TABLE OF CONTENTS
## (continued)

|  |  | **Page** |
|--|--|--|
| 1. | Section 1421(c) Pertains to Only the Denial of an Application for Naturalization | 29 |
| 2. | Congress Did Not Intend to Bar APA Claims or Funnel All Policy-Based Challenges into § 1421(c) | 32 |
| 3. | The District Court's Decision Runs Contrary to the Purpose of Creating a More Efficient Naturalization Process | 34 |
| 4. | Plaintiffs' Claims Are Not of the Type That Congress Intended to Channel Exclusively into § 1421(c) Actions | 36 |
| | a. Congress Did Not Intend That Challenges to Naturalization Policy Could Be Raised Only Under § 1421(c) | 37 |
| | b. The Government's Interpretation of § 1421(c) Is Not an Adequate Alternative to APA Review, Even in Cases Involving Final Denial of a Naturalization Application | 40 |

III. PLAINTIFFS' DECLARATORY JUDGMENT ACT CLAIM IS NOT SUBJECT TO DISMISSAL...................................................44

CONCLUSION.........................................................................................44

CERTIFICATE OF COMPLIANCE.................................................46

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ajlani v. Chertoff*,
545 F.3d 229 (2d Cir. 2008) ............................................................11

*Aparicio v. Blakeway*,
302 F.3d 437 (5th Cir. 2002) ...........................................................37

*Assoc. Elec. Co-op, Inc. v. Morton*,
507 F.2d 1167 (D.C. Cir. 1974) .......................................................20

*C&E Servs., Inc. v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002) .........................................................44

*Coal. for Underground Expansion v. Mineta*,
333 F.3d 193 (D.C. Cir. 2003) .........................................................25

*Department of Commerce v. New York*,
139 S. Ct. 2551 (2019) .....................................................................20

*Fedorenko v. United States*,
449 U.S. 490 (1981) ..........................................................................42

*General Elec. Co. v. Jackson*,
610 F.3d 110 (D.C. Cir. 2010) .......................................... 26-29, 31, 32

*Jarkesy v. SEC*,
803 F.3d 9 (D.C. Cir. 2015) .....................................25, 27, 28, 36, 37

*Kirwa v. Dep't of Defense*,
285 F. Supp. 3d 21, 30-31 (D.D.C. 2017) ..........................................8

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ..........................................................................39

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) .......................................................... 25-29, 31, 38

*Miriyeva v. U.S. Citizenship and Immigration Services*,
— F. Supp. 3d. —, 2019 WL 7037540 (D.D.C. 2019) .............22, 29, 38, 41, 44

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Miriyeva v. U.S. Citizenship and Immigration Services*,
No. 19-3351 (ESH) ..........................................................................30, 35, 36, 41

*Moms Against Mercury v. FDA*,
483 F.3d 824 (D.C. Cir. 2007)..........................................................................25

*Muscarello v. United States*,
524 U.S. 125 (1998)...........................................................................................29

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164, 186 (D.D.C. 2015).......................................................32, 44

*Ralpho v. Bell*,
569 F.2d 607 (D.C. Cir. 1977)..........................................................................20

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) (Scalia, J.)........................................................................31

*Sackett v. E.P.A.*,
566 U.S. 120 (2012)...........................................................................................30

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005)...........................................................................25

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)................................................................................ 26-29, 33

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006)...........................................................................28

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
136 S. Ct. 1807 (2016).......................................................................................30

*W. Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83 (1991).............................................................................................31

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**STATUTES**

5 U.S.C.
    § 701, *et seq*. (Administrative Procedure Act) ................................3, 20, 21, 41
    § 702...............................................................................................5, 20
    § 704.......................................................................................................27
    § 706........................................................................................20, 21, 41
    6 U.S.C.
    § 271(b)(2) .............................................................................................11

8 U.S.C.
    § 1252(a)(5) ...........................................................................................32
    § 1421 (Immigration and Nationality Act, § 310) ................................3
    § 1421(a) ................................................................................................34
    § 1421(c) ...........................................................5, 21, 23, 29, 40, 41
    § 1440 (Immigration and Nationality Act § 329) ................................3
    § 1440(a) ........................................................................................4, 6, 9
    § 1440(b)(3) ...........................................................................................10
    § 1446(d) ................................................................................................11
    § 1447(a) ..........................................................................................11, 17

    § 1447(b) ................................................................................................40

10 U.S.C.
    § 12685...................................................................................................10

28 U.S.C.
    § 2201 (Declaratory Judgment Act)...............................................3, 6

Pub. L. No. 101-649,
    § 104 Stat. 4978 (1990).........................................................................33
    § 401(a) (1990) ......................................................................................33
    § 5038 (1990) .........................................................................................33

**RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................................24

Fed. R. Civ. P. 12(b)(6)..................................................................................22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**REGULATIONS**

8 C.F.R.
§ 336.2(a) ...................................................................................11

Army Regulation
635-200 ...................................................................................14
635-200, Chapter 5-17 ...........................................................18
635-200, ¶ 5-1 ........................................................................14
635-200, ¶ 5-11 ......................................................................17

USCIS Policy Manual,
Vol. 12, Part B, Chap. 1 .........................................................43
Vol. 12, Part I, Ch. 3 ........................................................9, 12
Vol. 12, Part I, Ch. 5 ...............................................................12

**OTHER AUTHORITIES**

135 Cong. Rec. H4539 (July 31, 1989) ............................................33, 34

Department of Defense Instruction 1332.14 ....................................10, 11

H.R. Rep. No. 101-187 (1989) ...............................................................34

H.R. Rep. No. 101-955 (1990) ...............................................................33

Manual for Courts-Martial United States, Rule 1003(b)(8)(B)-(C) .......................10

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## I.     PARTIES AND *AMICI*

The Appellants are Plaintiffs Gunay Miriyeva, Ann Tum, Siddhi Kulkarni, and Bipin Kadel (collectively "Plaintiffs").  The Appellees are Defendants U.S. Citizenship and Immigration Services and Kenneth Cuccinelli, in his official capacity only (collectively "USCIS" or "Defendants").  Defendant Cuccinelli is the Senior Official Performing the Duties of the Director.  His appointment as acting Director of USCIS was determined to be in violation of federal law.  *See L.M.-M. v. Cuccinelli*, No. CV 19-2672 (RDM), 2020 WL 985376, at *19 (D.D.C. Mar. 1, 2020).  USCIS has not named a replacement, and the agency has not announced that he has stepped down from his role.

Currently, there are no *amici* in this case.

## II.     RULINGS UNDER REVIEW

The ruling under review is the December 21, 2019 Order and Memorandum Opinion issued by Judge Ellen S. Huvelle of the United States District Court for the District of Columbia granting USCIS's November 22, 2019 motion to dismiss all claims.  The District Court's opinion is found at *Miriyeva v. U.S. Citizenship and Immigration Services*, — F. Supp. 3d. —, 2019 WL 7037540 (Dec. 21, 2019), and its final order of dismissal is found at *Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), ECF No. 21 (Dec. 21, 2019).

## III.    RELATED CASES

The case under review has not been previously before this Court or any other court.  Plaintiffs are aware of the following related cases currently pending in the United States District Court for the District of Columbia:  (1) *Nio, et al. v. United States Department of Homeland Security, et al.*, No. 17-cv-0998 (D.D.C. filed May 24, 2017); (2) *Kirwa, et al. v. United States Department of Defense, et al.*, No. 17-cv-1793 (D.D.C. filed Sept. 1, 2017); and (3) *Calixto, et al. v. United States Department of the Army, et al.*, No. 18-cv-1551 (D.D.C. filed June 28, 2108). Plaintiffs are not aware of any cases other than those identified involving substantially the same parties and the same or similar issues that currently are pending in this Court or in any other United States Court of Appeals or any other court (whether federal or local) in the District of Columbia.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331 (federal question). On December 21, 2019, the District Court entered a final order granting USCIS's motion to dismiss all claims.  Plaintiffs timely filed a notice of appeal on February 18, 2020.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Does 8 U.S.C. § 1421 provide the exclusive basis for federal court jurisdiction over Plaintiffs' claims challenging USCIS's policy of treating "uncharacterized" military discharges as disqualifying for naturalization under 8 U.S.C. § 1440?

## PERTINENT STATUTES

The statutory provisions most relevant to this appeal are §§ 310 and 329 of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. §§ 1421 and 1440, respectively), the judicial review provisions of the Administrative Procedure Act ("APA") (5 U.S.C. § 701, *et seq.*), and the judicial review provision of the Declaratory Judgment Act (28 U.S.C. § 2201).  The pertinent statutory text is set forth below.

INA § 329 is titled "Naturalization through active-duty service in the Armed Forces during World War I, World War II, Korean hostilities, Vietnam hostilities, or other periods of military hostilities" and provides in relevant part:

> Any person who, while an alien or a noncitizen national of the United States, ***has served honorably*** as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, or during a period beginning February 28, 1961, and ending on a date designated by the President by Executive order as of the date of termination of the Vietnam hostilities, or thereafter during any other period which the President by Executive order shall designate as

- 3 -

a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force, ***and who, if separated from such service, was separated under honorable conditions***, may be naturalized as provided in this section if (1) at the time of enlistment, reenlistment, extension of enlistment, or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, or on board a public vessel owned or operated by the United States for noncommercial service, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence. The executive department under which such person served shall determine whether persons have served honorably in an active-duty status, and whether separation from such service was under honorable conditions: Provided, however, That no person who is or has been separated from such service on account of alienage, or who was a conscientious objector who performed no military, air, or naval duty whatever or refused to wear the uniform, shall be regarded as having served honorably or having been separated under honorable conditions for the purposes of this section. No period of service in the Armed Forces shall be made the basis of an application for naturalization under this section if the applicant has previously been naturalized on the basis of the same period of service.

8 U.S.C. § 1440(a) (emphasis added).

Section 310(c) of the INA is entitled "Judicial Review" and provides:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo,

- 4 -

and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

The "Right of Review" provision of the APA provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

The "Creation of remedy" provision of the Declaratory Judgment Act

provides:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

- 5 -

> legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

## STATEMENT OF THE CASE

Plaintiffs are veterans who enlisted in the United States Army under the Military Accessions Vital to the National Interest ("MAVNI") program, a Department of Defense ("DoD") initiative intended to provide non-citizens an expedited path to U.S. citizenship in exchange for service in the U.S. military during a time of designated hostilities. This expedited path is available so long as the soldier "has served honorably" and, if discharged, was discharged "under honorable conditions." 8 U.S.C. § 1440(a). Each Plaintiff served honorably for the requisite period and satisfies all other statutory criteria for citizenship. However, USCIS denied their citizenship applications because—while recognizing that their entire periods of military service were "honorable"—USCIS disagrees with the U.S. Army regarding the nature of their military discharges.

Each Plaintiff received a discharge while technically in "entry level" status in the Army. Both Ms. Miriyeva and Ms. Tum were discharged after being diagnosed with medical conditions, and Ms. Kulkarni was discharged after sustaining serious injuries during training with the Army. Mr. Kadel was discharged in error. The

- 6 -

Army specifically certified for immigration purposes that each Plaintiff had served honorably.  Even though each of these soldiers had served as a member of a reserve component for a significant period of time, because each Plaintiff was separated after fewer than 180 days of designated active duty service, the Army, per its regulations, issued discharge orders ("DD-214s") on which the Army did not formally characterize their discharges.  However, pursuant to statute and regulations, the military treats such entry-level "uncharacterized" discharges as "honorable" or "general (under honorable conditions)" discharges whenever a formal characterization is necessary.

The underlying action arose because USCIS has adopted a policy that does not accept an uncharacterized discharge as an under honorable conditions discharge for purposes of naturalization under 8 U.S.C. § 1440.  Instead, under USCIS policy, an applicant for naturalization under § 1440, based on eligible "honorable" military service, becomes categorically ineligible for naturalization upon receipt of an "uncharacterized" discharge from the military.   As explained below, this determination is contrary to both federal law and military regulation.  Congress expressly provided that USCIS must defer to the *military's* determination regarding the nature of a soldier's service and discharge, and USCIS has no authority to ignore this statutory mandate.

Plaintiffs brought suit in the United States District Court for the District of Columbia to resolve this inter-agency conflict and set aside USCIS's unlawful policy, asserting claims under the APA, the Constitution, and the Declaratory Judgment Act and seeking injunctive relief as to the Policy.  But the District Court never reached the merits of their claims.  Instead, the District Court determined that it lacked subject-matter jurisdiction over Plaintiffs' claims because, by offering naturalization applicants the opportunity to challenge their individual naturalization denials under 8 U.S.C. § 1421, Congress gave exclusive jurisdiction over these types of policy challenges to the district courts where each individual applicant resides.  In other words, the District Court held that § 1421 is a jurisdiction-stripping statute, meaning that Congress stripped all federal courts—other than the court hearing a § 1421 claim—of jurisdiction to review and determine the lawfulness of a USCIS policy related to a naturalization decision, including the unlawful policy at issue in this case.  That jurisdictional ruling is the subject of this appeal.

## I.     STATEMENT OF FACTS

### A.     The MAVNI Program

The MAVNI program was implemented to address "critical shortages of high-quality, multi-lingual, ethnically and culturally diverse recruits, and healthcare professionals" in the U.S. Armed Forces.  *Kirwa v. Dep't of Defense*, 285 F. Supp. 3d 21, 30-31 (D.D.C. 2017) (quoting Army Memorandum re "AR [MAVNI] Pilot

Program Implementation Guidance" (Mar. 24, 2009)). To further the military's goal of addressing that urgent recruiting need, the MAVNI program was meant to provide an expedited path to citizenship to foreign nationals who are legally present in the United States, possess critical foreign-language or medical skills, and serve honorably in the U.S. Armed Forces during designated periods of military hostilities. In particular, the INA provides:

> Any person who, while an alien or a noncitizen national of the United States, *has served honorably* as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States during [specified periods of hostilities] *and who, if separated from such service, was separated under honorable conditions*, may be naturalized as provided in this section[.]

8 U.S.C. § 1440(a) (emphasis added). As USCIS recognizes, "[o]ne day of qualifying service is sufficient in establishing eligibility." USCIS Policy Manual, Vol. 12, Part I, Ch. 3, § A.

Section 1440 vests the military branches with the exclusive authority to determine whether a service member's service was honorable.

> The executive department under which such person served shall determine whether persons have served honorably in an active-duty status, and whether separation from such service was under honorable conditions.

8 U.S.C. § 1440(a). The military also is responsible for providing an appropriate certification characterizing a soldier's service and, where applicable, separation.

- 9 -

> [S]ervice in the military, air or naval forces of the United States shall be proved by a duly authenticated certification from the executive department under which the applicant served or is serving, which shall state whether the applicant served honorably in an active-duty status during [specified periods of hostilities] and was separated from such service under honorable conditions.

8 U.S.C. § 1440(b)(3).

The military authorizes administrative discharges with characterizations of service as "honorable," "general (under honorable conditions)," or "under other than honorable conditions." Department of Defense Instruction ("DoDI") 1332.14, at 29. Non-administrative, punitive discharges of "bad conduct" and "dishonorable" are possible only after a guilty finding in a trial by court-martial. *See, e.g.*, Manual for Courts-Martial United States, Rule 1003(b)(8)(B)-(C) (2019). However, the military does not have to characterize an entry-level separation during the first 180 days of designated active duty military service, in which case the relevant records will state that the discharge is "uncharacterized." *Id.* at 29, 32-33.

Both federal law and DoD regulations treat an "entry-level" or "uncharacterized" discharge as an "honorable" or "general (under honorable conditions)" separation. For example, federal law expressly mandates that unless a soldier is discharged as a result of a court-martial or other formal proceeding (none of which applies to Plaintiffs), the soldier "is entitled to a discharge under honorable conditions." 10 U.S.C. § 12685. Consistent with and explicitly referencing the

- 10 -

statute, DoD policy under the heading "Uncharacterized Separation" specifies that "an entry-level separation of a Service member of a Reserve Component for cause . . . will be 'under honorable conditions.'"  DoDI 1332.14, at Encl. 4, § 3c(1)(d).  In addition, this DoD policy, under the same "Uncharacterized Separation" heading, independently requires that "[w]ith respect to administrative matters outside this instruction that require a characterization as honorable or general, an entry-level separation will be treated as the required characterization." *Id*. at Encl. 4, § 3c(1)(c).

### B.    USCIS Procedures and Policies

USCIS is the agency within the Department of Homeland Security that administers the U.S. naturalization and immigration system.  6 U.S.C. § 271(b)(2); *Ajlani v. Chertoff*, 545 F.3d 229, 231 n.2 (2d Cir. 2008).  It is responsible for processing and deciding naturalization applications, including those brought pursuant to § 1440.  As with any naturalization application, a USCIS immigration services officer will review a § 1440 application and decide it in the first instance. 8 U.S.C. § 1446(d).  If the officer denies the application, the applicant may seek an agency hearing on that denial.  8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(a).

The USCIS Policy Manual sets out the agency's policies regarding the § 1440 honorable service requirement.  It states:

> Honorable service means only service in the U.S. armed forces that is designated as honorable service by the

> executive department under which the applicant performed that military service.
>
> Both "Honorable" and "General-Under Honorable Conditions" discharge types qualify as honorable service for immigration purposes. *Other discharge types, such as "Other Than Honorable," do not qualify as honorable service*.

USCIS Policy Manual, Vol. 12, Part I, Ch. 3 (emphasis added).  Notably, the USCIS Policy Manual conflates the concepts of honorable service and honorable discharges, which makes sense given that a soldier who serves honorably every day during his or her period of service cannot be discharged from that same service period under other than honorable conditions.

Volume 12, Part I, Chapter 5 of USCIS's Policy Manual explains that "[t]he Request for Certification of Military or Naval Service [Form N-426] confirms whether the applicant served honorably in an active duty status or in the Selected Reserve of the Ready Reserve."  According to USCIS's own Policy Manual, certification by the military, on a form created for this purpose, is by itself sufficient evidence of the determination required under § 1440.  The USCIS Policy Manual explains that only if a veteran submits an *uncertified* Form N-426 does the veteran need to submit any further evidence, such as a DD-214.  USCIS Policy Manual, Vol. 12, Part I, Ch. 5 ("USCIS, however, will accept a completed but uncertified [N-426] submitted by an applicant who has separated from the U.S. armed forces if:  The

applicant submitted a photocopy of his or her Certificate or Release from Active Duty (DD Form 214) . . .").

Although (1) both § 1440(a) and the Policy Manual state that the service branches are responsible for determining the nature of a veteran's service and discharge and that certifications from the military control this question, and (2) the military treats an "uncharacterized" discharge as an "honorable" or "general (under honorable conditions)" discharge, it is nevertheless USCIS policy to disregard the military's determination, even if it is explicit on a military-certified Form N-426. Instead, USCIS treats any entry-level "uncharacterized" discharge as a separation *not* "under honorable conditions" for purposes of § 1440 (hereinafter, the "Policy").

### C.    Plaintiffs' Military Service and Application of the USCIS Policy

#### 1.    Gunay Miriyeva

Plaintiff Gunay Miriyeva enlisted in the Selected Reserve of the Ready Reserve of the United States Army under the MAVNI program in 2016. JA16. Ms. Miriyeva's rank was Specialist E-4. *Id.* In March 2018, Ms. Miriyeva applied for naturalization under § 1440. *Id.* Her naturalization application included a Form N-426 on which the Army confirmed that Ms. Miriyeva's service was "honorable." *Id.*

On October 4, 2018, USCIS approved Ms. Miriyeva's application for naturalization, making her immediately eligible to take the oath of citizenship.

JA17.  USCIS did not, however, schedule Ms. Miriyeva for an oath ceremony.  The Army then ordered Ms. Miriyeva to report to training at Fort Jackson, South Carolina.  *Id.*  Despite Ms. Miriyeva's requests, in the month-long period between her naturalization approval and training ship date, USCIS failed to schedule her oath ceremony.  JA18.

While at training, Ms. Miriyeva sought treatment at an Army medical facility where she learned that she had developed a lump in her breast.  *Id.*  Following her diagnosis, the Army determined she was medically unable to continue military service.  *Id.*  An Army official informed Ms. Miriyeva that her discharge would be treated as "honorable."  *Id.*  On December 21, 2018, the U.S. Army discharged Ms. Miriyeva and issued her a Form DD-214, noting her discharge was due to a medical condition and classifying it as an entry-level "uncharacterized" discharge.  *Id.*

Had Ms. Miriyeva served 180 days on active duty, the Army would have been required to characterize her discharge on her DD-214 and thus would have listed her discharge as "honorable."  *Id.*  Ms. Miriyeva's DD-214 states that the "Separation Authority" is Army Regulation 635-200, Paragraph 5-11.  JA69.  Army Regulation 635-200, Paragraph 5-11g refers to Paragraph 5-1 of the same regulation: "For characterization of service or description of separation, see paragraph 5-1."

Army Regulation 635-200, Paragraph 5-1 reads as follows:

> 5-1.  Characterization of service or description of separation

a. Unless the reason for separation requires a specific characterization, a Soldier being separated for the convenience of the Government will be awarded a character of service of honorable, under honorable conditions, or an uncharacterized description of service if in entry-level status.

b. No Soldier will be awarded a character of service under honorable conditions under this chapter unless the Soldier is notified of the specific factors in his/her service record that warrant such a characterization, using the notification procedure. Such characterization is normally inappropriate for Soldiers separated under the provisions of paragraphs 5–4, 5–11, 5–12, 5–15, 5–16, or 5–17.

Thus, the Army Regulations under which Ms. Miriyeva was discharged provide that it is "normally inappropriate" to award a character of service less than "honorable" (i.e., even "under honorable conditions," or obviously even lower characterizations of service) when a soldier is separated for medical reasons. This is because even an "under honorable conditions" discharge can significantly prejudice a veteran with respect to her civilian life. This is even further confirmation that the Army treats an uncharacterized discharge as an "honorable" discharge.

But USCIS has not treated it that way. Following her discharge, Ms. Miriyeva submitted multiple Form N-426s—all dated *after* her discharge—in which the Army certified her *entire* period of service, up through and including her date of discharge, as "honorable." JA18-19, JA72, JA80. Ms. Miriyeva was forced to file suit under 8 U.S.C. § 1447(b) to require USCIS to schedule an oath ceremony for her approved

- 15 -

naturalization application. JA19. In response, USCIS first scheduled and then "descheduled" Ms. Miriyeva's oath ceremony. *Id.*; JA77. After her suit was remanded to USCIS, the agency continued to vacillate. USCIS revoked its prior approval of Ms. Miriyeva's naturalization application, stating that she failed to show she had been discharged "under honorable conditions" due to her "uncharacterized" discharge order, stating that "[l]ongstanding USCIS policy provides that only a discharge specifically characterized as either 'honorable' or 'general (under honorable conditions)' qualifies as a separation 'under honorable conditions.'" JA20. In August 2019, however, USCIS again approved Ms. Miriyeva's application (because the agency was operating under the misunderstanding that Ms. Miriyeva had not been discharged from the military), only to reverse course and again refuse to schedule an oath ceremony in light of the "uncharacterized" discharge. JA21-22. Although Ms. Miriyeva has filed an administrative "appeal" under 8 U.S.C. § 1447(a), JA23, it cannot reasonably be expected to affect her application decision so long as the Policy remains in effect. USCIS has not decided Ms. Miriyeva's "appeal" even though it was filed in August 2019, following the first denial notice she received. JA23.

## 2.    Ann Tum

Plaintiff Ann Tum enlisted in the Selected Reserve of the Ready Reserve of the United States Army on March 17, 2016. JA24. She was assigned to the 411th

Engineering Brigade and held the rank of U.S. Army Private First Class. *Id*. In August 2018, Ms. Tum applied for naturalization pursuant to 8 U.S.C. § 1440, submitting her N-400 application and Form N-426 on which the Army certified that her military service had been honorable. *Id*.

Ms. Tum reported to training in November 2018 and shipped to Fort Jackson, South Carolina. *Id*. While in training, Ms. Tum was diagnosed with high blood pressure and was discharged in February 2019 due to her medical condition. JA24-25. Her discharge Form DD-214 classified her discharge as entry-level and "uncharacterized." JA90. Like Ms. Miriyeva's DD-214, Ms. Tum's DD-214 states that the "Separation Authority" is Army Regulation 635-200, Paragraph 5-11. *Id*. As discussed above, this is even further confirmation that Ms. Tum's discharge must be considered "honorable." Notably, although she sought counseling from the Army prior to her discharge, the Army did not inform her that her discharge would negatively impact her ability to naturalize. JA24. On May 20, 2019, the Army provided a Form N-426 certifying that Ms. Tum's entire period of service *and* discharge were "honorable." JA25, JA93-94. USCIS nevertheless denied Ms. Tum's application on the sole basis that her Form DD-214 designates her discharge as "uncharacterized." JA26. Ms. Tum filed an administrative "appeal" under 8 U.S.C. § 1447(a). *Id*. On or about April 20, 2020, USCIS denied her administrative "appeal" solely on the basis of her "uncharacterized" discharge.

- 17 -

### 3. Siddhi Kulkarni

Plaintiff Siddhi Kulkarni enlisted in the U.S. Army on January 22, 2016 and shipped to basic training in May 2018. JA26-27. In her second week of basic training, Ms. Kulkarni sustained serious injuries, including a broken pelvis and knee. JA27. Several months into her recovery, the Army notified Ms. Kulkarni that she might be medically discharged. *Id.* Although the notice discusses the main categories of discharge and warns of the potential negative consequences of a "general (under honorable conditions)" or "other than honorable" discharge, it says nothing about an "uncharacterized" discharge. JA104-105. On December 7, 2018, the Army issued a Form DD-214 discharging Ms. Kulkarni due to her medical condition, listing her discharge type as entry-level and "uncharacterized." JA28, JA107. Similar to Ms. Miriyeva's DD-214 and Ms. Tum's DD-214, Ms. Kulkarni's DD-214 states that the "Separation Authority" is Army Regulation 635-200, Chapter 5-17, which also means the Army, absent extraordinary circumstances, would not have provided a discharge treated less than an "honorable" one. JA107.

On December 21, 2018, Ms. Kulkarni submitted her application to USCIS, including a Form N-426, with the Army's certification that she had served honorably for her entire period of service, through and including her date of discharge. JA28, JA110. The Army issued a second N-426 in June 2019, again certifying that Ms. Kulkarni's service had been "honorable." JA29, JA121. USCIS nevertheless denied

her application based on its Policy concerning "uncharacterized" discharges.  JA29, JA114-118.   Ms. Kulkarni filed an administrative "appeal" under 8 U.S.C. § 1447(a), which USCIS denied based solely on her "uncharacterized" discharge. JA29, JA125-128.

### 4.    Bipin Kadel

Plaintiff Bipin Kadel enlisted in the Selected Reserve of the Ready Reserve of the United States Army in 2015.  JA29-30.  In July 2017, Mr. Kadel applied for naturalization under § 1440. JA30.  His application included a Form N-426, wherein the U.S. Army certified that Mr. Kadel's service had been "honorable."   JA30, JA131.  In August 2017, the U.S. Army issued a discharge order (effective July 24, 2017) after it failed to ship Mr. Kadel to basic training within two years of his enlistment—an application of the so-called "two-year time-out rule."   JA30.   Mr. Kadel had no prior notice of this discharge action, and his discharge order specifies it was "uncharacterized."  JA135.  In 2019, USCIS denied Mr. Kadel's naturalization application, solely on the basis of his "uncharacterized" discharge.  JA30, JA137-139.  Although Mr. Kadel has been reinstated in the Army, USCIS has not reversed his naturalization denial decision.  Mr. Kadel has filed an administrative "appeal" under 8 U.S.C. § 1447(a).

- 19 -

## II.    THE JUDICIAL REVIEW FRAMEWORK

The APA governs the process by which federal agencies develop and issue regulations, and it provides for judicial review to those adversely affected or aggrieved by agency action.  5 U.S.C. § 702.

The APA "embodies a 'basic presumption of judicial review,' and instructs reviewing courts to set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Department of Commerce v. New York*, 139 S. Ct. 2551, 2567 (2019) (quoting 5 U.S.C. § 706(2)(A)) (internal citations omitted).  This review generally is applicable to agency action, except where (1) a statute specifically precludes judicial review of a particular action or (2) the action taken was within that agency's discretion under law.  *Id.*; 5 U.S.C. § 701(a); *see also Ralpho v. Bell*, 569 F.2d 607, 617 (D.C. Cir. 1977); *Assoc. Elec. Co-op, Inc. v. Morton*, 507 F.2d 1167, 1176-77 (D.C. Cir. 1974).

Unlike the APA's general provision allowing review of adverse agency action, § 1421(c) of Title 8 provides judicial review for one specific type of agency action: the final denial of a naturalization application.  If a USCIS hearing officer affirms the denial of an application, the naturalization applicant may seek judicial review of that denial under § 1421(c).

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, *may seek review of such denial* before the United States district court for

- 20 -

> the district in which such person resides in accordance
> with chapter 7 of title 5.  Such review shall be de novo,
> and the court shall make its own findings of fact and
> conclusions of law and shall, at the request of the
> petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c); *see also* 5 U.S.C. §§ 701-706, *et seq*. (APA Ch. 7, "Judicial

Review").

## III.    PROCEDURAL HISTORY

In November 2019, Plaintiffs commenced this action challenging the unlawful

USCIS Policy.  Plaintiffs asserted claims under the APA, the U.S. Constitution, and

the Declaratory Judgment Act.  JA38.

While Plaintiffs believe and alleged in the Complaint that they would have

been naturalized long ago but for the challenged Policy, the Complaint does not seek

review of any USCIS naturalization decision or an order of naturalization.  Rather,

the Complaint challenges the Policy itself and seeks an injunction against USCIS's

enforcement of the Policy.  JA45.

In particular, the Complaint challenges the USCIS "policy that improperly

holds that an applicant for naturalization based on their military service is ineligible

for citizenship if the applicant received an entry-level . . . or 'uncharacterized'

discharge from the military."  JA12; *see also id.* ("The Policy is directly contrary to

federal law and must be set aside."); JA14 ("The Policy is unlawful and must be set

aside."); *id*. ("bring this action . . . to set aside the Policy"); JA40 ("the Policy is

unlawful"); JA41-42 (seeking to set aside the Policy because the Policy is not accordance with law, the Policy is arbitrary and capricious, Defendants did not quantify or consider harms in enacting the Policy, Defendants exceeded delegation of statutory authority, Defendants did not meet notice requirements, and Defendants did not comply with notice and comment rulemaking).

As relief, the Complaint seeks an order enjoining USCIS from applying the erroneous Policy and, in particular, from treating an "uncharacterized" discharge as different from an "honorable" or "general (under honorable conditions)" discharge. JA45.

USCIS moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.  On December 21, 2019, the District Court accepted the government's argument that 8 U.S.C. § 1421 mandates that Plaintiffs' APA and constitutional claims may be brought only in a § 1421 action and granted the motion to dismiss the Complaint.  *Miriyeva v. U.S. Citizenship and Immigration Services*, — F. Supp. 3d. —, 2019 WL 7037540 (D.D.C. 2019) (JA250-273).[1]  The District Court did not reach the merits of the underlying Policy challenge.

Plaintiffs now appeal the decision of the District Court.

_____

[1] Because the District Court granted USCIS's motion on jurisdictional grounds, it did not reach the government's other arguments.  JA259 n.10.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Plaintiffs' claims.  The federal courts have subject-matter jurisdiction to hear Plaintiffs' APA, constitutional, and Declaratory Judgment Act challenges to USCIS's policy of overriding the military's determination and treating "uncharacterized" discharges effectively as "other than honorable" discharges for purposes of naturalization under § 1440.  Although 8 U.S.C. § 1421(c) is the proper vehicle for challenging a final agency decision denying naturalization, no such decision is challenged in Plaintiffs' suit.  Plaintiffs do not seek review of the denial of any naturalization application and do not seek an order of naturalization through this action.  Rather, Plaintiffs seek an injunction against USCIS's unlawful policy in order to remove a categorical barrier to the prompt and proper adjudication of their naturalization applications.

As with any statutory analysis, the inquiry must begin with the text of § 1421(c).  And, in this case, that analysis provides the definitive answer.  The plain language of the statute says nothing at all about depriving the federal courts of jurisdiction to hear claims directly under the APA or the Constitution merely because those claims relate to the naturalization process.  Nor does § 1421(c) implicitly strip the courts of subject-matter jurisdiction.  As such, in the absence of express and direct jurisdiction-stripping language, there is no basis for finding that § 1421(c)

provides the sole basis for federal court jurisdiction over challenges to agency-wide policy related to a naturalization decision.

Moreover, the legislative history shows that the bill that introduced § 1421(c) was understood *not* to address preventing judicial review of "regulations, policies, and practices" concerning the adjustment of immigration status. It was, however, intended to make the naturalization process more efficient, whereas the District Court's erroneous ruling that Plaintiffs' policy-based challenge may be brought only in seriatim, localized, and potentially contradictory individual § 1421(c) actions has the opposite effect.

Plaintiffs' policy-based claims, and the relief they seek enjoining and setting aside USCIS's unlawful policy, are not the type of claims Congress intended to—or did—channel exclusively into actions under § 1421(c).

There is no jurisdictional barrier to Plaintiffs' claims under the APA, Constitution, or Declaratory Judgment Act, and this case should be remanded for adjudication on the merits.

## ARGUMENT

## I.    THE MOTION TO DISMISS STANDARD

A Rule 12(b)(1) motion challenges the existence of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court must accept the well-pled facts of the complaint as true and must "construe the complaint liberally, granting

plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)) (internal quotation marks omitted).  In addition to the pleadings, the court may consider "undisputed facts evidenced in the record."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).  The plaintiff asserting jurisdiction has the burden of establishing it.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

This Court reviews *de novo* the District Court's conclusion that it lacked subject-matter jurisdiction.  *See, e.g., Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citing *Fisher–Cal Indus., Inc. v. United States*, 747 F.3d 899, 902 (D.C. Cir. 2014)).

## II.    THE DISTRICT COURT HAS JURISDICTION TO HEAR PLAINTIFFS' APA AND CONSTITUTIONAL CLAIMS

### A.    Judicial Review

It is uncontroversial that "[l]itigants generally may seek review of agency action in district court under any applicable jurisdictional grant."  *Jarkesy*, 803 F.3d at 15.  Where, as here, the issue is whether a statute strips the courts of subject-matter jurisdiction to hear an otherwise cognizable claim, the Supreme Court's decision in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), makes it clear that the statutory language controls.  As this Court has noted, *McNary* unambiguously held "that claims falling outside the text of a jurisdiction-channeling provision—like

[plaintiff's] pattern and practice challenge—may proceed in the district court." *General Elec. Co. v. Jackson*, 610 F.3d 110, 127 (D.C. Cir. 2010).

In *McNary*, the Supreme Court concluded that a statute prohibiting courts from reviewing denials of individual applications for a special immigration status did not bar those same courts from considering "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." 498 U.S. at 492. While the *McNary* Court observed the lack of alternative routes for judicial review in the circumstance before it, its conclusion that jurisdiction existed "rested entirely on the Court's analysis of the jurisdictional provision's text," in particular, the distinction between "collateral and particularized claims." *General Elec.*, 610 F.3d at 126 (finding jurisdiction to hear pattern and practice challenge under the APA and facial constitutional challenge, despite statute that "[n]o Federal court shall have jurisdiction . . . to review . . . any [unilateral administrative order]," because the provision did not explicitly bar a pattern and practice challenge and plaintiff sought no relief with respect to any particular unilateral administrative order).

The District Court's opinion emphasized the two-part analysis set out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to evaluate whether a special statutory scheme implicitly strips the courts of jurisdiction to review agency action under a more general scheme:

> Under *Thunder Basin*'s framework, courts determine that
> Congress intended that a litigant proceed exclusively
> through a statutory scheme of administrative and judicial
> review when (i) such intent is "fairly discernible in the
> statutory scheme," and (ii) the litigant's claims are "of the
> type Congress intended to be reviewed within [the]
> statutory structure."

*Jarkesy*, 803 F.3d at 15 (quoting *Thunder Basin*, 510 U.S. at 207, 212).

As to the first factor, courts evaluate whether Congress intended to preclude

judicial review outside a special statutory review scheme by evaluating "the statute's

language, structure, and purpose, its legislative history, and whether the claims can

be afforded meaningful review." *Thunder Basin*, 510 U.S. at 207 (internal citation

omitted); *see also* 5 U.S.C. § 704 (agency action reviewable under the APA where

"there is no other adequate remedy in a court"). If the plain language of the statute

does not bar the sought review, the jurisdictional inquiry is complete, *General Elec*.

*Co*., 610 F.3d at 126 (finding that the decision in *McNary* "rested entirely on the

Court's analysis of the jurisdictional provision's text"), obviating the need to

consider legislative history and the meaningfulness of review.

The second factor requires a court to consider whether there is a "strong

countervailing rationale" that suggests that Congress intended the particular type of

claims asserted by the plaintiff to be heard outside the special statutory review

scheme:

> [T]he Supreme Court has told us what to look for: we are
> to presume that Congress wanted the district court to

- 27 -

> remain open to a litigant's claims if a finding of preclusion
> could foreclose all meaningful judicial review; if the suit
> is wholly collateral to a statute's review provisions; and if
> the claims are outside the agency's expertise.

*Jarkesy*, 803 F.3d at 17 (internal quotation marks omitted). These considerations are not themselves dispositive, and do not "form three distinct inputs into a strict mathematical formula. Rather, the considerations are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Id.* Whatever the weight of these "guideposts" in a particular case, however, the statutory language ultimately must control. *McNary*, 498 U.S. at 483-84; *General Elec.*, 610 F.3d at 125-26. Because the analysis is conjunctive ("and"), only where the text and structure of the statute does appear to implicitly strip jurisdiction need the court even consider this second factor. *See, e.g.*, *Thunder Basin*, 510 U.S. at 215 n.20 ("This case thus does not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim.").

### B.    Section 1421(c) Does Not Strip the Courts of Subject-Matter Jurisdiction to Hear Plaintiffs' Claims

An APA challenge falls within the general federal question jurisdiction of the district courts. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006). Absent a provision stripping the courts of jurisdiction to hear an otherwise cognizable claim, the U.S. District Court for the District of Columbia is fully

empowered to hear Plaintiffs' APA and constitutional challenge to USCIS's Policy.

*See General Elec.*, 610 F.3d at 125-26.  Section 1421(c) is not such a provision.

### 1.    Section 1421(c) Pertains to Only the Denial of an Application for Naturalization

The plain language of § 1421(c) provides for judicial review of one specific

action: the denial of a naturalization application:

> A person whose application for naturalization under this subchapter is denied . . . *may seek review of such denial* before the United States district court for the district in which such person resides in accordance with [the "Judicial Review" provisions of the APA].

8 U.S.C. § 1421(c) (emphasis added).  The statutory text is clear that this provision

concerns review of the single act of a denied citizenship application and not

collateral challenges to USCIS policies.  *See McNary*, 498 U.S. at 492 ("such a

denial" language refers to a single act and thus describes "the process of direct

review of individual denials" rather than "general collateral challenges to

unconstitutional practices and policies used by the agency in processing

applications"); *see generally General Elec.*, 610 F.3d at 125-26; *Thunder Basin*, 510

U.S. at 207; *Muscarello v. United States*, 524 U.S. 125, 127 (1998) (statutes are read

according to their ordinary meaning).  In fact, the District Court expressly described

the scope of § 1421(c) this way.  *Miriyeva*, 2019 WL 7037540, at *3 ("If a

naturalization application is denied by the USCIS hearing officer, § 1421(c) provides

for judicial review of that denial[.]").  The relevant text is straightforward and says

nothing at all about prohibiting review of other types of agency action—even agency action in the naturalization context—by other means.

The APA makes final agency action reviewable,[2] even if it relates to other, also-reviewable final agency action. *See U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1816 (2016) (mining companies need not wait for completion of permitting process to seek review of a jurisdictional determination made as part of that process); *Sackett v. E.P.A.*, 566 U.S. 120, 128 (2012).  It is implausible to construe § 1421(c)'s channeling of jurisdiction for the narrow act of denying a naturalization application as shorthand for also channeling any agency action that ultimately might facilitate that denial, particularly in light of the presumption that Congress drafts legislation with precision:

> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.  Not because Congress is too unpoetic to use synecdoche, but because that literary device is incompatible with the need for precision in legislative drafting.

---

[2] USCIS has conceded that the initial application of the disputed Policy to Plaintiffs constituted final agency action.  *See Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), Defendants' Motion to Dismiss, ECF No. 15-1, at 15 (Nov. 22, 2019) (characterizing the Policy as final agency action).

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Scalia, J.). This reasoning has been applied directly to jurisdiction-stripping provisions and has resulted in a finding that the statutory language was insufficient to bar review:

> *McNary*'s conclusion that the immigration statute's jurisdiction-stripping provision presented no bar to a pattern and practice suit did not depend on the unavailability of alternative means of judicial review. Instead, it rested entirely on the Court's analysis of the jurisdictional provision's text: "*Given Congress' choice of statutory language*, we conclude that challenges to the procedures used by INS do not fall within the scope of [the jurisdictional bar]."

*General Elec.*, 610 F.3d at 126 (quoting *McNary*, 498 U.S. at 494) (emphasis added).

If Congress had wanted to use § 1421(c) to preclude review of other types of final agency action outside of the single act of a naturalization application denial, it was fully capable of drafting a clear jurisdiction-stripping provision—and has done just that elsewhere in the INA. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 89 (1991) (courts should note other statutes or sections of an act where Congress explicitly does what is at best suggested in the language at issue). For example, § 1252 of Title 8 states:

> *Notwithstanding any other provision of law* (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e).

8 U.S.C. § 1252(a)(5) (emphasis added). In *R.I.L-R v. Johnson*, the district court concluded that this language "expressly limited APA review over individual deportation and exclusion orders." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 186 (D.D.C. 2015). However, the court recognized that this express limitation was limited to individual orders and still did not "manifest[] an intent to require those challenging an unlawful, nationwide . . . policy" to seek relief outside of the APA. *Id*. Thus, according to the plain meaning of § 1421(c), and under the Supreme Court's reading of similar sections of law, § 1421(c)'s judicial review is limited and does not preclude review of other challenges, including policy challenges under the APA.

On its face, § 1421(c) provides for review of one type of claim: those arising out of a denial of a naturalization application after completion of the agency review process. Even assuming, as Plaintiffs do, that § 1421(c) creates the exclusive means for reviewing such an individual denial, the statute says nothing at all about other types of claims and does not deprive the courts of jurisdiction to hear appropriate claims merely because they arise in the naturalization context. The narrow scope of § 1421(c) does not bar Plaintiffs' APA and constitutional claims.

### 2. Congress Did Not Intend to Bar APA Claims or Funnel All Policy-Based Challenges into § 1421(c)

If the plain language of the statute does not bar the sought review, as is the case here, the jurisdictional inquiry is complete. *See General Elec.*, 610 F.3d at 125-

26.  But even if the Court looks beyond the express provisions of the text, § 1421(c) also does not bar APA or constitutional claims by implication.  *See Thunder Basin*, 510 U.S. at 207 (considering evidence of Congressional intent, including the statute's purpose and legislative history).

Congress enacted § 1421(c) as part of the Immigration Act of 1990 (the "1990 Act").  Pub. L. No. 101-649, § 401(a), 104 Stat. 4978, 5038 (1990).  The Conference Report notes that a House amendment had provided that nothing in the Immigration Report and Control Act "would be construed as preventing judicial review of the regulations, policies, and practices governing the adjustment of status."  H.R. Rep. No. 101-955, at 134-35 (1990) (Conf. Rep.).  The Senate bill had no comparable provision, and the House provision was deleted from the final legislation.  *Id*.  The Conference Report indicated that this issue should be addressed in later legislation— a strong indication that § 1421(c) was not intended or understood to limit already-available forms of judicial review.  *Id*.

Elsewhere referring to the language establishing the administrative regime in what later became § 1421, Congress explained that the proposed statute "does not take away any of the judicial review rights accorded applicants today."  135 Cong. Rec. H4539, H4542 (1989).  And the House Report, speaking with respect to § 1421(c), confirms: "[C]itizenship is the most valued governmental benefit of this land and applicants should receive full recourse to the Judiciary when the request for

that benefit is denied." H.R. Rep. No. 101-187, at 14 (1989). These statements, too, show that § 1421(c) does not strip the courts of jurisdiction over all other types of claims regarding the naturalization process.

### 3. The District Court's Decision Runs Contrary to the Purpose of Creating a More Efficient Naturalization Process

While Congress did not intend for § 1421(c) to preclude other types of claims, it did intend to improve the efficiency of the naturalization process by reducing the "long backlogs in moving through the naturalization process once the time period for naturalization has been accomplished and the various requirements of naturalization have been met." 135 Cong. Rec. H4539, H4542 (July 31, 1989) (statement of Rep. Morrison). In § 1421(a), Congress provided for an administrative naturalization process that replaced the previous process of judicial naturalizations because it was concerned that delays in naturalization could "run into the months and sometimes beyond a year." *Id*.

Here, interpreting § 1421(c) as jurisdiction-stripping not only is contrary to its text, but also directly contravenes Congress' explicit intent to speed up the naturalization process. Funneling all claims that are even collaterally related to the denial of a citizenship application into § 1421(c) proceedings ensures that all naturalization applicants will be mired in an agency review process that requires an initial denial, agency review, and then a district court-level review under § 1421(c) that cannot adequately address their policy-based claims.

- 34 -

Plaintiffs are prime examples of the inefficiencies of this interpretation. Ms. Miriyeva, for example, applied for naturalization on March 29, 2018 and was approved for naturalization by USCIS on October 4, 2018. JA17. Accordingly, Ms. Miriyeva should have been a naturalized citizen for the last year and a half. However, USCIS failed to schedule Ms. Miriyeva's oath ceremony and then denied her application on June 11, 2019, after she was medically discharged from the military. JA18, JA21. Ms. Miriyeva's administrative "appeal" efforts to USCIS have gone on for more than nine months at the time of this filing, even though the continued denial of her naturalization application is a foregone conclusion given USCIS's Policy.

These manufactured delays in naturalization go well beyond the mere months of delay that were common before the 1990 Act, and they must be repeated for each individual veteran who falls into the hole created by USCIS's Policy. According to USCIS, the Policy itself could never be set aside if channeled through a § 1421(c) action. *See Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 16, at 14 n.12 (Dec. 4, 2019) ("[W]hat happens is the federal judge will make a decision that USCIS improperly denied someone. And one or two of those decisions starts coming out, then USCIS starts to sort of see the writing on the wall and then they change their approach to this.") (quoting Transcript of Nov. 12, 2019 Teleconference

at 16:3-7). Thus, under the Policy and USCIS's reading of § 1421(c), *see infra* § II(B)(4)(b), each veteran would have to go through an individual series of administrative denials, administrative "appeals" proceedings, and district court battles in order to challenge the same Policy over and over again.[3] Not only does this create a wasteful burden on the entire administrative and judicial system, but the series of guaranteed denials at the administrative level and litigation expenses at all levels will result in a burdensome, if not insurmountable, challenge for many non-citizen veterans who have served honorably and have earned their places as United States citizens.

### 4. Plaintiffs' Claims Are Not of the Type That Congress Intended to Channel Exclusively into § 1421(c) Actions

In determining whether a claim falls outside of a statute's judicial review provision, courts consider other extra-textual factors only if the statutory text is unclear, including whether the claim is "wholly collateral" to the statute's review, whether "meaningful judicial review" is not otherwise possible, and whether the claims are outside of the statutory agency's expertise. *Jarkesy*, 803 F.3d at 17. Even

---

[3] The absurdity of such a position is underscored by USCIS's other arguments in the District Court, which include that the six-year statute of limitations period began to run in 2008, when the Policy first became a final agency action. Defendants' Motion to Dismiss, *Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), ECF No. 15-1, at 1 (Nov. 22, 2019); Defendants' Reply in Support of Motion to Dismiss, *Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), ECF No. 17, at 16 (Dec. 11, 2019).

if the text of § 1421(c) were unclear, none of the additional factors supports a conclusion that it strips the District Court of jurisdiction to hear Plaintiffs' APA and constitutional challenges to the USCIS Policy.

### a.    Congress Did Not Intend That Challenges to Naturalization Policy Could Be Raised Only Under § 1421(c)

Collateral claims are those not "inextricably intertwined" with those of the judicial review provision, and thus they may be reviewed in district courts outside the judicial review scheme. *Id*. at 23. As noted above, collateral status is one among many "general guideposts" used in determining whether a claim falls into a judicial review provision absent clear textual guidance. *Id*. at 17. Here, Plaintiffs' APA and constitutional claims are manifestly collateral to the determinations of their individual citizenship applications.

As confirmed by the Complaint allegations and the relief sought, as described above, this case is not about an individualized naturalization determination, the unique practices of a particular agency office, or any other application-specific issue that § 1421(c) lawsuits are particularly well-suited to address. *Cf. Aparicio v. Blakeway*, 302 F.3d 437, 439, 446 (5th Cir. 2002) (challenge to the practice of a single field office, not an agency-wide policy). Instead, this case presents a question of statutory interpretation involving what USCIS itself acknowledges to be a

generally-applicable, agency-wide policy. Here, those questions are both collateral to the naturalization determination itself and the "bread and butter" of APA review.

Plaintiffs have not sought review through this action of any denial of a naturalization application. While Plaintiffs' success in this action naturally will further their naturalization applications by removing an impediment created by USCIS's unlawful Policy, an ultimate naturalization determination for each Plaintiff is a separate question for another day. Collateral claims are those that do not result in rulings that resolve the merits of the related statutory action. *See McNary*, 498 U.S. at 495 (reasoning that a ruling in plaintiffs' favor would not have the effect of establishing their entitlement to the immigration status outside the exclusive statutory scheme, thus making it collateral). Thus, the policy challenge here necessarily is collateral because the District Court cannot grant citizenship to these Plaintiffs, nor would the District Court's decision setting aside the Policy have the effect of immediately or automatically granting (or denying) citizenship to Plaintiffs.

The District Court's reasoning that § 1421(c) precludes jurisdiction because, "[a]lthough plaintiffs insist they are not asking this Court to reverse the denial of their naturalization applications, their claims attack head-on the only reason given for the denial of their applications," *Miriyeva*, 2019 WL 7037540, at *6, runs counter to the requisite collateral analysis. This reasoning seems to suggest that a policy challenge cannot be collateral to a decision where it is the only thing standing in the

way of a different decision but that it could be collateral if it were only one of multiple grounds for a denial decision. But the fact that "denying [petitioner's] substantive claim 'for other reasons' or upholding it 'under other provisions' . . . would not answer his constitutional challenge" demonstrates that it is "entirely collateral to his substantive claim of entitlement." *Mathews v. Eldridge*, 424 U.S. 319, 331–32 (1976) (internal citation omitted). This holds true even where the particular individual petitioners already happen to have demonstrated their satisfaction of all other applicable naturalization criteria such that no "other reasons" now exist for them, even though they might for other applicants also subject to the Policy. This proposition that Plaintiffs are unable to challenge the USCIS Policy at issue in this action precisely because they are otherwise worthy of citizenship leads to a nonsensical result. The logical extension of this reasoning would suggest that Plaintiffs' attack would not be barred if USCIS's denial decisions had indicated an additional ground that was not subject to this challenge. Access to judicial review cannot reasonably turn on such a distinction. Congress cannot have intended to afford *less* judicial review to applicants *more* worthy of citizenship.

Indeed, further confirmation that Plaintiffs' challenges to the unlawful USCIS Policy are collateral and not "of the type" that Congress intended to channel exclusively into a § 1421(c) proceeding comes from the fact that there is no impediment to such claims being raised by a naturalization applicant who does not

have yet have an initial denial decision from USCIS (which would trigger the administrative "appeal" process and eventually allow for a § 1421(c) proceeding). Section 1421(c) speaks only of situations where an application "is denied." For example, to the extent that USCIS refuses to issue a decision on a naturalization application more than 120 days after an interview, § 1447(b) provides a path to the district court for a hearing on the matter and gives the court "jurisdiction over the matter" and to "determine the matter" or remand it with instructions. 8 U.S.C. § 1447(b). To hold that Congress had channeled policy challenges exclusively into § 1421(c) would mean that a court acting pursuant to § 1447(b) could not consider a policy challenge—a result which is not in accord with the plain language of either statute and makes no sense. In addition, determining that § 1421(c) is the exclusive route for this Policy challenge would leave organizational plaintiffs and classes of naturalization applicants impacted by the Policy without an avenue to challenge the Policy, which again makes no sense. Thus, it cannot be the case that § 1421(c) is the *exclusive* avenue for challenging this Policy, so why would Congress have foreclosed these other avenues only for the Plaintiffs?

> **b.    The Government's Interpretation of § 1421(c) Is Not an Adequate Alternative to APA Review, Even in Cases Involving Final Denial of a Naturalization Application**

Section 1421(c) provides for review of the final denial of a naturalization application "in accordance with chapter 7 of title 5," *i.e.*, the "Judicial Review"

provisions of the APA found at 5 U.S.C. §§ 701-706.  8 U.S.C. § 1421(c).  Although the District Court erred in concluding that Plaintiffs' APA and constitutional claims *must* be raised under § 1421(c), the District Court was correct that the substance of those claims *may* be brought in or along with a § 1421(c) cause of action.  *Miriyeva*, 2019 WL 7037540, at *10-11 (finding that USCIS's policy challenges are "cognizable under § 706(2) of the APA" and that Plaintiffs "will be able to raise these same arguments under § 1421(c)" (citing *De Dandrade v. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 186-87 (S.D.N.Y. 2019)).  Nothing in § 1421(c) limits the scope of relief available under 5 U.S.C. § 706, which it incorporates by reference.  Under the familiar provisions of the APA, a reviewing court has broad authority to "hold unlawful and set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," unconstitutional, or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."   5 U.S.C. § 706(2)(A)-(C).

But USCIS disagrees.  USCIS takes the position that a court adjudicating a § 1421(c) claim can only remedy the erroneous denial of an individual naturalization application and that the court cannot set aside USCIS's Policy even if it found the Policy unlawful.  *See Miriyeva v. U.S. Citizenship and Immigration Services*, No. 19-3351 (ESH), Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No.

16, at 14 n.12 (Dec. 4, 2019) ("[W]hat happens is the federal judge will make a decision that USCIS improperly denied someone.  And one or two of those decisions starts coming out, then USCIS starts to sort of see the writing on the wall and then they change their approach to this.") (quoting Transcript of Nov. 12, 2019 Teleconference at 16:3-7).  In USCIS's view, the Policy, at most, would be found inappropriate as applied to an individual veteran, and USCIS would be free to continue to apply the Policy to other veterans unless and until it chose to change the Policy.  This stance is both incorrect and problematic for several reasons.

The limited scope of review and relief that USCIS envisions would require every veteran harmed by the Policy to file a separate suit and re-litigate the Policy's lawfulness even if other courts already had found it to be unlawful.  This would waste judicial resources, could lead to inconsistent results for similarly-situated veterans who applied for naturalization, and would allow USCIS to continue to apply its unlawful policy.  This (1) would do harm to the Constitution's Uniform Rule of Naturalization, which requires "judicial insistence on strict compliance with the statutory conditions precedent to naturalization" because "Congress alone has the constitutional authority to prescribe rules for naturalization," *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); (2) would run contrary to the INA's goal of uniformity in naturalization determinations, *see* U.S. Code Cong. & Ad. News, pp. 2981-82 (1961) ("[T]he requirements and provisions of the Immigration and

Nationality Act will be uniform and will apply to all petitioners for naturalization."); and (3) is not in accord with USCIS's own professed goal of uniformity in decision-making, *see* USCIS, Policy Manual, Vol. 12, Part B, Chap. 1 ("Uniformity in decision-making and application processing is vital to the integrity of the naturalization process. Consistency in the decision-making process enhances USCIS' goal to ensure that the relevant laws and regulations are applied accurately to each case.").

Moreover, requiring individual suits for relief would compound the harms suffered by veterans, with mounting harm for each day of delay imposed by pointless administrative "appeals." These harms include the potential for deportation and other immigration consequences; the impact of their discharge and consequential immigration status on employment opportunities; the stigma of their discharges being treated as dishonorable by a federal agency; negative impact on family immigration petition rights; severely limited travel opportunities; and the inability to vote. Plaintiffs have felt and will continue to feel these consequences in every part of their lives—amounting to reputational, financial, and emotional harms, stripping these veterans of freedom of movement and fundamental civic rights.

The detrimental consequences of waiting multiple years for their cases to be foreseeably and repeatedly denied based on a policy that is contrary to law demonstrate the lack of any adequate alternative review under USCIS's conception

- 43 -

of § 1421(c) jurisdiction.  *See R.I.L-R*, 80 F. Supp. 3d at 185 (*de novo* review "offers no adequate remedy for the period of unlawful detention members of the class suffer before receiving this review–the central inquiry at issue in this case").  Channeling each Plaintiff's legal claims into an individual § 1421(c) action is inefficient, wastes judicial resources, and unnecessarily delays resolution of a discrete legal issue that can and should be decided efficiently in the case Plaintiffs already brought in the D.C. District Court.

## III.  PLAINTIFFS' DECLARATORY JUDGMENT ACT CLAIM IS NOT SUBJECT TO DISMISSAL

The District Court dismissed Plaintiffs' Declaratory Judgment Act claim solely based on its erroneous conclusion that it lacked jurisdiction over Plaintiffs' APA and constitutional claims.  *Miriyeva*, 2019 WL 7037540, at *11.  Because those claims are viable for the reasons discussed above, Plaintiffs' Declaratory Judgment Act claim is viable as well.  *See C&E Servs*., *Inc. v. D.C. Water & Sewer Auth*., 310 F.3d 197, 201 (D.C. Cir. 2002) ("[T]he Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'").

## CONCLUSION

For all of these reasons, the judgment of the District Court should be reversed and the case remanded for further proceedings.

Dated:  May 26, 2020

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP


By: /s/ Jennifer M. Wollenberg
    Jennifer M. Wollenberg
    Douglas W. Baruch
    Susan Baker Manning
    MORGAN, LEWIS & BOCKIUS LLP
    1111 Pennsylvania Avenue, NW
    Washington, DC  20004
    Telephone:     +1.202.739.3000
    Facsimile:     +1.202.739.3001
    jennifer.wollenberg@morganlewis.com

    *Attorneys for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 10,440 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

2.      This brief complies with the requirements of Federal Rules of

Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a 14-

point proportionally spaced serif font.

/s/ Jennifer M. Wollenberg
Jennifer M. Wollenberg

- 46 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 26, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Jennifer M. Wollenberg
Jennifer M. Wollenberg

- 47 -